Scott E. Davis
State Bar No. 016160
SCOTT E. DAVIS, P.C.
8360 E. Raintree Drive, Suite 140
Scottsdale, AZ 85260

Telephone: (602) 482-4300
Facsimile: (602) 569-9720
email: davis@scottdavispc.com

Scott M. Harris
State Bar No. 011524
Scott M. Harris, P.C.
8360 E. Raintree Drive, Suite 140
Scottsdale, AZ 85260

Telephone: (602) 252-7400
Facsimile: (602) 795-5610
email: harris@smharrislaw.com

*Attorneys for Plaintiff Eamonn Hogan*

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Eamonn Hogan,<br><br>        Plaintiff,<br><br>    v.<br><br>Metropolitan Life Insurance Company; Dignity Health; Dignity Health's Health and Welfare Plan,<br><br>        Defendants. | Case No.<br><br>**COMPLAINT** |

Now comes the Plaintiff Eamonn Hogan (hereinafter referred to as "Plaintiff"), by and through his attorneys, Scott E. Davis and Scott M. Harris, and complaining against the Defendants, he states:

*Jurisdiction*

1. Jurisdiction of the court is based upon the Employee Retirement Income Security Act of 1974 (ERISA); and in particular, 29 U.S.C. §§1132(e)(1) and 1132(f). Those provisions give the district courts jurisdiction to hear civil actions brought to recover employee benefits. In addition, this action may be brought before this Court pursuant to 28 U.S.C. §1331, which gives the Court jurisdiction over actions that arise under the laws of the United States.

*Parties*

2. Plaintiff is a resident of Maricopa County, Arizona.

3. Upon information and belief, Dignity Health (hereinafter referred to as the "Company") sponsored, administered and purchased a group long term disability insurance policy which was fully insured by Metropolitan Life Insurance Company (hereinafter referred to as "MetLife"). The specific group long term disability insurance policy is known as group policy number 114178-1-G (hereinafter referred to as the "Policy"). The Company's purpose in sponsoring, administering and purchasing the Policy was to provide long term disability insurance for its employees. Upon information and belief, the MetLife Policy may have been included in and part of an employee benefit plan, specifically named the Dignity Health's Health and Welfare Plan (hereinafter referred to as the "Plan") which may have been created to provide the Company's employees with welfare benefits. At all times relevant hereto, the Plan constituted an "employee welfare benefit plan" as defined by 29 U.S.C. §1002(1).

4. Upon information and belief, MetLife functioned as the claim administrator of the policy; however, pursuant to the relevant ERISA regulation, the Company and/or the

Plan may not have made a proper delegation or properly vested fiduciary authority or power for claim administration in MetLife.

5. MetLife operated under a conflict of interest in evaluating Plaintiff's long term disability claim due to the fact that it operated in dual roles as the decision maker with regard to whether Plaintiff was disabled and also as the payor of benefits.

6. The Company, MetLife and the Plan conduct business within Maricopa County and all events giving rise to this Complaint occurred within Arizona.

*Venue*

7. Venue is proper in this district pursuant to 29 U.S.C. §1132(e)(2) and 28 U.S.C. §1391.

*Nature of the Complaint*

8. Incident to his employment, Plaintiff was a covered employee pursuant to the Plan and the relevant Policy and a "participant" as defined by 29 U.S.C. §1002(7). Plaintiff seeks disability income benefits from the Plan and the relevant Policy pursuant to §502(a)(1)(B) of ERISA, 29 U.S.C. §1132(a)(1)(B), as well as any other employee benefits he may be entitled to from the Company, the Plan and any other Company Plan as a result of being found disabled in this action.

9. After working for the Company as a loyal employee, Plaintiff became disabled on or about November 22, 2012, due to serious medical conditions and was unable to work in his designated occupation as a Manager, IT Construction. Plaintiff has remained disabled as that term is defined in the relevant Policy continuously since that date and has not been able to return to any occupation as a result of his serious medical conditions.

10. Following his disability, Plaintiff filed a claim for short term disability benefits which was approved by MetLife, and those benefits have been paid and exhausted.

1  Following the exhaustion of his short term disability benefits, Plaintiff then filed for long
2  term disability benefits under the relevant Policy which was administered by MetLife,
3  meaning that it made the decision with regard to whether Plaintiff was disabled and entitled
4  to benefits.

5     11.   The MetLife Policy provides the following definition of disability pertaining
6  to long term disability benefits:

   Disability or Disabled means that as a result of Sickness or injury You are either Totally Disabled or Partially Disabled.

   Totally Disabled or Total Disability means:

   During the Elimination Period and the next 24 months, You are unable to perform with reasonable continuity the Substantial and Material Acts necessary to pursue Your Usual Occupation in the usual and customary way.

   After such period, You are not able to engage with reasonable continuity in any occupation in which You could reasonably be expected to perform satisfactorily in light of Your:

   - age;
   - education;
   - training;
   - experience;
   - station in life; and
   - physical and mental capacity

   that exists within any of the following locations:

   - a reasonable distance or travel time from Your residence in light of the commuting practices of Your community;
   - a distance or travel time equivalent to the distance or travel time You traveled to work before becoming disabled; or
   - the regional labor market, if You reside or resided prior to becoming disabled in a metropolitan area.

12. In support of his claim for long term disability benefits, Plaintiff submitted to MetLife medical, vocational and lay-witness evidence which supported his allegation that he met any definition of disability as defined in the relevant Policy.

13. Plaintiff submitted to MetLife a January 14, 2014 narrative letter from his treating board certified family physician who confirmed it is his medical opinion, "…it is reasonable to assume [Plaintiff] will be unable to sustain any employment indefinitely..."

14. Further supporting his claim, Plaintiff submitted a November 23, 2013, evaluation from a medical professional who concluded after an extensive evaluation of Plaintiff and his medical conditions, "To a high degree of… probability, it is clear [Plaintiff] will continue to be unable to work in any position--even on a part-time basis--indefinitely."

15. Further supporting his claim, Plaintiff submitted a vocational report from a certified vocational expert dated January 24, 2014, who after reviewing Plaintiff's medical evidence and the definition of disability and interviewing Plaintiff concluded, "From a vocational standpoint, it is clear that [Plaintiff] is totally disabled…"

16. In addition to the medical records and reports submitted to MetLife, Plaintiff submitted two sworn affidavits from his significant other and long-time friend, who both confirmed Plaintiff is unable to work in any occupation and that his medical condition has not improved in any way since his date of disability.

17. During the administrative review of Plaintiff's long term disability claim, he also applied for, was approved and is currently receiving Social Security disability benefits through the Social Security Administration (hereinafter referred to as "SSA").

18. In a letter dated May 5, 2014, Plaintiff informed MetLife that his claim for Social Security disability benefits had been approved and he submitted to MetLife a copy of his April 21, 2014 Notice of Award from the SSA. The evidence supporting Plaintiff's

SSA claim was so persuasive that SSA approved it without him having to attend a hearing with an Administrative Law Judge.

19. The SSA found Plaintiff became disabled from engaging in any gainful occupation which may have existed in the national economy as of October 20, 2012.

20. The SSA's definition of disability is more stringent and difficult to meet than the aforementioned definition of disability in the MetLife Policy during the Usual Occupation Period, and is substantially similar to the Policy's definition of disability during the Any Occupation Period. Therefore, the SSA's approval of Plaintiff's claim is relevant evidence for this Court to consider with regard to the reasonableness of MetLife's decision to deny Plaintiff's disability claim.

21. As part of its review of Plaintiff's claim for long term disability benefits, MetLife obtained a medical records only "paper review" from a physician of its choosing, Alan Cusher, Ph.D., who found Plaintiff's medical evidence sufficient to support impairment at a level that would preclude him from performing the duties of his prior occupation.

22. In a letter dated July 9, 2014, MetLife informed Plaintiff it was approving his long term disability claim from November 28, 2012 through January 8, 2014. MetLife then denied Plaintiff's claim and terminated his disability benefits effective January 9, 2014 due to a lack of medical evidence beyond that date. In making this decision, MetLife abused any discretion that may have been afforded to it in the relevant Plan and/or Policy.

23. Pursuant to 29 U.S.C. §1133, Plaintiff timely appealed MetLife's July 9, 2014 determination to deny disability benefits beyond January 8, 2014 and in support of his claim

1   for long term disability benefits, Plaintiff submitted to MetLife additional medical and
2   vocational evidence demonstrating he met any definition of disability set forth in the Policy.

3   24.   Plaintiff submitted to MetLife a December 10, 2014 narrative letter from his
4   treating board certified family physician who confirmed, "It remains my opinion that
5   [Plaintiff] remains totally disabled…"

6   25.   Plaintiff also submitted to MetLife an August 29, 2014 Progress Note from a
7   medical professional who first evaluated him in November 2013, and did so again after his
8   benefits were terminated.  After a second extensive clinical evaluation with Plaintiff, the
9   medical professional confirmed, "My clinical impression after seeing him for an extended
10  interview is that he is functioning at essentially the same level as described in my report of
11  November 2013.  It remains my opinion that [Plaintiff] is unable to work in any occupation
12  on a competitive basis."

13  26.   Further supporting his claim, Plaintiff submitted a December 29, 2014
14  addendum vocational report from the certified vocational expert who previously
15  interviewed him and who after reviewing Plaintiff's updated medical evidence and
16  interviewing Plaintiff again concluded, "…it is without question that [Plaintiff] is unable to
17  work in his former occupation or any occupation that may exist in the national economy."

18  27.   Plaintiff also submitted to MetLife updated medical records from his treating
19  providers.

20  28.   Despite the objective medical and vocational evidence supporting
21  Plaintiff's claim for long term disability benefits, as part of its review of Plaintiff's claim,
22  MetLife referred him to a medical examination with a physician that it chose, Daniel
23  Blackwood, Ph.D.  After a superficial examination with Dr. Blackwood, who upon
24  information and belief, Plaintiff believes may be regularly retained by the insurance

1  industry, he opined Plaintiff was able to engage in a gainful occupation and was not
2  disabled.  Plaintiff alleges that Dr. Blackwood's opinion that he can engage in a gainful
3  occupation is inaccurate, erroneous and against the clear weight of all the evidence.
4  Upon information and belief, Plaintiff alleges a motivating factor why Dr. Blackwood
5  opined he was able to return to a gainful occupation is in part due to his relationship with
6  the insurance industry and the regular medical examinations he may perform for the
7  industry.  As a result of his relationship with the insurance industry, Plaintiff alleges that
8  Dr. Blackwood may have an interest in protecting that relationship and as a result, he
9  may be biased and lack objectivity.

10        29.     As an additional part of its review of Plaintiff's claim for long term disability
11 benefits, MetLife obtained a medical records only "paper review" from a physician of its
12 choosing, Arousiak Varpetian Maraian, M.D.

13        30.     Upon information and belief, Plaintiff alleges Dr. Maraian may be a long time
14 medical consultant for the disability insurance industry and/or MetLife.  As a result,
15 Plaintiff alleges Dr. Maraian may have an incentive to protect her own consulting
16 relationship with the disability insurance industry and/or MetLife by providing medical
17 records only paper reviews, which selectively review or ignore evidence such as occurred in
18 Plaintiff's claim, in order to provide opinions and report(s) which are favorable to insurance
19 companies and which supported the denial of Plaintiff's claim.

20        31.     In letters dated March 25, 2015 and April 23, 2015, MetLife provided
21 Plaintiff with a copy of the reports authored by Drs. Blackwood and Maraian.

22        32.     In response to Drs. Blackwood and Maraian's reports, Plaintiff submitted
23 additional evidence from his medical professionals.  Notwithstanding Drs. Blackwood and
24 Maraian's reports and opinions, Plaintiff's medical professionals again opined in response

letters that he remained disabled and unable to work in any occupation due to his serious medical conditions.

33. In a letter dated May 19, 2015, MetLife notified Plaintiff it had denied his claim for long term disability benefits under the Policy. In the letter, MetLife also notified Plaintiff he had exhausted his administrative levels of review and could file a civil action lawsuit in federal court pursuant to ERISA. In making this decision, MetLife again abused any discretion that may have been afforded to it in the relevant Plan and/or Policy.

34. Upon information and belief, MetLife's May 19, 2015 denial letter confirms it failed to provide a full and fair review, and in the process committed several procedural violations pursuant to ERISA due to among other reasons, completely failing to credit, reference, consider, and/or selectively reviewing and de-emphasizing most, if not all of Plaintiff's reliable evidence.

35. In evaluating Plaintiff's claim on appeal, MetLife owed him a fiduciary duty and it had an obligation pursuant to ERISA to administer his claim, "solely in his best interests and other participants" which it failed to do. [1]

36. Plaintiff alleges MetLife provided an unlawful review which was neither full nor fair and that violated ERISA, specifically, 29 U.S.C. § 2560.503-1, by failing to adequately investigate his claim; failing to credit Plaintiff's reliable evidence; failing to have

---

[1] It sets forth a special duty of care upon a plan administrator, namely, that the administrator "discharge [its] duties" in respect to discretionary claims processing "solely in the interests of the participants and beneficiaries" of the plan, § 1104(a)(1); it simultaneously underscores the particular importance of accurate claims processing by insisting that administrators "provide a 'full and fair review' of claim denials," Firestone, 489 U.S., at 113, 109 S. Ct. 948, 103 L. Ed. 2d 80 (quoting § 1133(2)); and it supplements marketplace and regulatory controls with judicial review of individual claim denials, see § 1132(a)(1)(B). *Metro. Life Ins. Co. v. Glenn*, 128 S. Ct. 2343, 2350 (U.S. 2008).

him as well as his claim evaluated by medical professions who are fair and impartial; failing to adequately consider the approval of Plaintiff's Social Security disability claim; providing one sided reviews of Plaintiff's claim that failed to consider all the evidence submitted by him and/or de-emphasizing medical evidence which supported Plaintiff's claim; disregarding Plaintiff's self-reported symptoms; failing to consider all the diagnoses and/or limitations set forth in his medical evidence as well as the impact the combination of those diagnoses and impairments would have on his ability to work; failing to engage Plaintiff in a dialogue so he could submit the necessary evidence to perfect his claim and failing to consider the impact the side effects from Plaintiff's medications would have on his ability to engage in any occupation.

37. Plaintiff alleges a reason MetLife provided an unlawful review which was neither full nor fair and that violated ERISA, specifically, 29 U.S.C. § 2560.503-1, is due to in part to its conflict of interest that manifested as a result of the dual roles MetLife undertook as the decision maker and payor of benefits. MetLife's conflict of interest provided it with a financial incentive and motivation to deny Plaintiff's claim.

38. Plaintiff is entitled to discovery regarding MetLife's aforementioned conflicts of interest, the potential conflicts of interest of Drs. Cusher, Blackwood and Maraian, as well as any other individual who reviewed his claim and the Court may properly weigh and consider extrinsic evidence regarding the nature, extent and effect of *any* conflict of interest and/or ERISA procedural violation which may have impacted or influenced MetLife's decision to deny his claim.

39. With regard to whether Plaintiff meets the definition of disability set forth in the Policy, the Court should review the evidence in Plaintiff's claim *de novo*, because even

if the Court concludes the policy confers discretion, the unlawful violations of ERISA committed by MetLife as referenced herein are so flagrant they justify *de novo* review.

40. As a direct result of MetLife's decision to deny Plaintiff's disability claim, he has been injured and suffered damages in the form of lost long term disability benefits, in addition to other potential employee benefits he may have been entitled to receive through or from the Plan, any other Company Plan and/or the Company as a result of being found disabled. Upon information and belief, Plaintiff alleges that other potential employee benefits he may be entitled to, include but may not be limited to, health and other insurance related coverage or benefits, retirement benefits or a pension, life insurance coverage and/or the waiver of the premium on a life insurance policy providing coverage for him and his family/dependents.

41. Pursuant to 29 U.S.C. §1132, Plaintiff is entitled to recover unpaid benefits, prejudgment interest, reasonable attorney's fees and costs from Defendants.

42. Plaintiff is entitled to prejudgment interest at the legal rate pursuant to A.R.S. §20-462, or at such other rate as is appropriate to compensate him for losses he incurred as a result of Defendants' nonpayment of benefits.

WHEREFORE, Plaintiff prays for judgment as follows:

A. For an Order requiring Defendants to pay Plaintiff his long term disability benefits and any other employee benefits he may be entitled to as a result of being found disabled pursuant to the Plan and/or Policy, from the date he was first denied these benefits through the date of judgment and prejudgment interest thereon;

B. For an Order directing Defendants to continue paying Plaintiff the aforementioned benefits until such time as he meets the conditions for termination of benefits;

C. For attorney's fees and costs incurred as a result of prosecuting this suit pursuant to 29 U.S.C. §1132(g); and

D. For such other and further relief as the Court deems just and proper.

DATED this 15th day of September, 2015.

SCOTT E. DAVIS. P.C.

By: */s/ Scott E. Davis*
Scott E. Davis
Attorney for Plaintiff